al. Mr. Jenkins v. C.R.E.S. Management. Still good morning. Good morning. My name is Cardos Leon. I represent the appellant plaintiff, Mr. Shannon Jenkins, in this matter. The central issue in this case is the duty that a premises owner has to its tenants,  but the responsibility that the landlord has to provide adequate safety, adequate security to protect them from the criminal acts of third parties. In this particular Now, counsel, let me get to it. We know that the trial court limited the proof of what danger of harm there was to require security. What offer of proof did you make, what proffer did you make that made this such a lawless situation that security was required, irrespective of how much violence had occurred? What is in the record by either—didn't get into the evidence, maybe admissible—but what did you proffer? What have we got to show that would raise a greater issue of harm than the trial court looked for? Your Honor, I think the answer to that question is based on the appellee's own crime log statistics. They kept their own statistics, and in those statistics, they showed 45 crimes happened in the 12 months prior at their proximity. So this is not crimes that happened outside the property or a mile from the property. These are on the property. What the trial court did was they limited those crimes. They eliminated some of those crimes because they focused on similarity. And even though 18 months prior to this crime— Well, what were those 45 crimes? Those 45 crimes, Your Honor, so I can give you the exact detail, you've got 14— Would they make you afraid somebody's going to step up to your door and shoot you? Well, 18 months prior, Your Honor, there was an actual crime committed on the property similar to the one that happened to Mr. Jenkins. Two assailants came up to a door. They knocked on it. They went in. They actually shot one of the occupants of the apartment complex. That was 18 months prior. And so another issue is that all of these crimes that we talk about when we say these 45 crimes, many of them are burglaries and thefts, but you have to look at this from the perspective as Timberwalk did. You've got crimes that happened at a commercial property, kind of like in Trammell Crow, and you've got crimes that happened in a residential dwelling, kind of like Timberwalk. And in Timberwalk— So this trial court did have all of the evidence of harm, potential harm? Not only did they have it, Judge, but the trial court in their memorandum and the magistrate's memorandum actually said he was going to set aside the fact that he knew there had been a crime similar to this one 18 months prior. They were going to set aside the Mr. Jenkins' own testimony. You have to understand, Mr. Jenkins was what they called a courtesy officer, which is kind of a neat name for an unarmed resident that gets to walk around and see what's going on on the property. So he had some firsthand knowledge. But really important to this case is Henry Ridge, an employee of the appellate, who sat in that management office right at the front gate, testified that he saw with his own eyes assaults. He saw crimes. I was going to ask you about that. I get to—I was reading along and I get to the bottom page 17 of your briefs, that's the first time you mentioned that he witnessed assaults and drug deals, heard of reported gunshots. And doors being kicked open in broad daylight. And why is it that more prominently—it's at the bottom of the page and then everything else is about the 14 burglaries. Judge, I tried to focus on what Timberwalk sets out, and that is that— What does the record say about reported gunshots, witnessed assaults, drug deals, doors being kicked in? Well, the report for the appellees, it's 14 burglaries, six thefts. I mean, I'm giving you the data, but it's essentially over close to 30 burglaries,     I'm not going to go into the details of that. I'm not going to go into the details of that. And those happen on the property. And, I'll say, are you saying what you described at the bottom of the page 17 of your brief is already included in the list of things you just gave? Mr. Ridge's testimony was separate and apart. I'm asking you, what does the record say about assaults, drug deals, reported gunshots, and doors being kicked open in broad daylight? And, Judge, maybe I'm not understanding your question. What does the record say about those occurrences? The record included the crime statistics from the appellee, it included the testimony from  the appellee who was the local beat cop that basically said, yes, I was there on a daily basis. Additional information is the evidence. Okay, what kind of assaults were witnessed? Were they domestic violence or something else? There was some domestic violence. Were there any that were not domestic violence? There were. How many? I'm talking about the bottom page 17 of your brief. If they're different from what's in the crime log, tell me. They're not. Those are in. Okay. Those are not different? The crime log statistics, I think I'm confusing the question. All right, let me make it as clear as I possibly can. On the bottom of your page 17, you list certain things. Correct. Are these included in the crime log or are these different incidents? They're included in the crime log. So, they're described one way or another already? Correct. We don't know anymore about how dangerous those commissions were. To anybody. Well, of course they were dangerous, Your Honor. I mean, they happened on the property. Some of them were assaults as people were walking into their homes. Some of them were thefts and burglaries of automobiles that were unoccupied. The district court includes, for example, well, there was one assault the district court included. Correct. That was done solely on the basis of the crime log. Correct. So, from the district court's standpoint, the crime log was sufficient for it to comply with timber wall contracts. In my opinion, yes. But it made a per se decision that property crimes will never count. Correct. And let me address the property crime issue. Because the property crime issue versus the crimes against the person issue is something that is addressed in timber wall and also in Trammell Cove. What do we know about the 14 burglaries? Well, we know that they happened on the property. What kind of burglaries? Where on the property? What time of day? Some of them were burglaries of the person. Like, in other words, people walking up to their apartment, getting out of their car, walking up to their apartment. That's a robbery, not a burglary. Well, some of the burglaries were inside the home where they broke into a house, stole something. Some of them were burglaries of a car. They broke into a car and stole something. How many burglaries of a home were there? Your Honor, I'd have to look at the crime log. I've got these in general numbers in terms of the burglaries, the thefts, the burglaries of the motor vehicle. Seven of them were burglaries of the motor vehicle, specifically. The other 14 burglaries were burglaries to either individuals as they were walking up or of their home, on the property inside of their home. One challenge is, I mean, these two Supreme Court cases sort of have clarified and have been utilized by lower courts. But you don't file a reply brief. And if I remember your table of authorities, you don't mention a single Texas lower court decision. So part of maybe my, the uncertainty we have is how are lower courts in Texas applying these two cases? Are they demanding more than a crime log that the premises owner himself keeps? And Judge, the answer is, I don't have the answer. I don't have those, there's not specific cases I can cite to you today. Your opposing counsel did cite extensive lower court Texas decisions. And I've got those cases and I'm ready to, on rebuttal, I can. But are those courts relying on just a crime description in order to make the first step categorical in or out? And then do they move and require more discovery to do the five-factor analysis? The way that Timberwalk sets it out is you're supposed to do all of the crimes, any crimes, before you do the analysis. What the trial court did in our case was I guess what I'm asking is what are lower courts in Texas doing? It seems like they are doing some, like in Trammell, you may have 150 and if you've got, well, a domestic battery, there are certain crimes that are very clearly excludable. Would you agree or you wouldn't agree? No, I would agree with that. Okay. Okay. So maybe that's what the district court did here. It tried to follow that line of authority. We're just going to personally exclude stuff that has no relation to sort of gun violence. The opponent's approach is really a two-pronged approach. I mean, first, we believe that they erroneously didn't follow Timberwalk and they followed Trammell Crow. And when they followed Trammell Crow What evidence did you give us to say had the district court looked at these burglaries, it would have come out differently? All we've got is burglary. What does that tell us? The crime log itself that's part of the record, it specifically talks about what each crime was. It tells you if it was on a person, if it tells you if it was against an automobile, it tells you if it was on a vehicle. It tells you if it was against the apartment itself, the unit itself. So that information is in the crime log. You know, again, what we feel like the trial court did erroneously was Right, so burglary, motor vehicle says in the law. Correct. And then burglary, you're saying it's into the apartment, analogous to this case, just says apartment? Correct. Again, the position the appellant has taken, that even if they look at Trammell Crow and I was starting to talk about that a minute ago. Crimes against property essentially will lead to crimes against a person when you look at it in a residential dwelling setting. The Trammell Crow case, when you look at the Trammell Crow case, it's somebody that was leaving a movie theater at a large mall. So all those 200 and something crimes that you just alluded to, Judge, a lot of those were simple theft that are reported inside of a mall, inside of a store, not so much inside of the parking lot, okay? They had to include all those, so they limited them. The Timberwalk case, and in the Timberwalk case, the appellant loses that case, right? It's a rape victim at an apartment complex. But the court also says, well, in 10 years, there was only three crimes at that apartment complex. In our case, if you look at all the crimes, we've got 45 crimes that are happening on our property within 12 months. 18 months prior, there's a crime extremely close to what happened to Mr. Jenkins. So again, we feel like the court limited when they granted that motion of summary judgment, they limited the scope of the crimes based on them looking at how to limit the factors, not to take, like Timberwalk says, to take any and all crimes, then you do the analysis. And so our position is that they erroneously did not look at all of those crimes. And more importantly, they've got one of their own employees, which I still believe is a very important factor, that knows and testified to the fact that he knew that these sort of dangerous situations were going on inside of the premises. So it's our position that when you look at the Timberwalk case, the Timberwalk case sets out these factors. That is the seminal case when you're looking at these sorts of invasions or crimes that happen in apartment complexes. And that's different and distinguishable from what happened in Trammell Crow, which was a commercial setting. There is a phrase in the Timberwalk case that says increased frequency reduces the need for similarity. In other words, if you've got a lot of crimes going on at this apartment complex, then you really don't need to be looking at exactly the same sort of crime to find foreseeability and the increased duty for the landlord. And in this case, that's what we have. We have a lot of crimes taking place at this facility. Pelley wants you to focus on just whether or not there was another one just like what happened to Mr. Jenkins. So as we sit here today, looking at the different standards that are applied here, we want the court to reverse the summary judgment that was granted and hold the appellee to the standard that's required that they need to provide adequate security in these sort of situations. This may not be pertinent to this particular issue, but I would like some clarification. It seemed like your client had different versions of what happened. Did he open the door or not? He did not. And we had an expert that went out and looked at the property. And his testimony is that when he heard the knocking, it woke him up. And his testimony is that I knew that door was coming open. I grabbed the handle. As I'm grabbing the handle, it's blowing open. The physical evidence, when the police officer gave his deposition, the physical evidence to him said the door had been kicked open. That was his testimony. When you say a courtesy officer, was he a security officer? No. Security responsibilities? Judge, when he moved in six months prior, when he leased the place, part of the deal was, you know what, you can be what we'll call the courtesy officer, which is essentially an unarmed resident who at night patrols. If he sees something, then he reports it back to the management company. There was no security company. After this incident, they hired a security company. This is another. It doesn't matter. I'm just curious. After Timberwalk, the Texas legislature codified, if you will, Timberwalk, why didn't anybody ever cite the statute in these cases? I don't think anybody ever does. Right. Why? Your Honor, the statute was not cited. We felt like we had sufficient evidence under Timberwalk and the factors. I'm just curious. It's on the books. Nobody bothered to cite it. I understand. At this point, we'll cede our remaining time until rebuttal. Thank you. May it please the court. Crime may be visited upon virtually anyone at any time. Why wasn't the 18 months prior assault with a gun where someone was shot in the complex enough? Well, the court... When does it take it? What time? First of all, it was 18 months prior. Okay. That's not very long. Well, but Timberwalk says that even a few instances of crime spread out over a long period of time rebut foreseeability. But in addition to that, what we had in that case, we had someone breaking into the apartment. In this case, the suspects did not break into the apartment. Well, apparently there's a conflict in the evidence about that. Well, I don't... There's no evidence... The only two people that were in that apartment that day were Mr. Jenkins and the gentleman who was sleeping on his couch named Mr. Bushnell. Both of them say in their depositions that the perpetrators never set foot in the apartment. But is it disputed whether the door was kicked open? It is disputed. It's disputed... It's also disputed whether or not Mr. Jenkins opened the door. But there's a fact question and we assume the facts in his favor. Let's assume the door was kicked in. Or pushed in. I don't think it... Even if it was kicked in or pushed in, Your Honor, there's no testimony that the perpetrators  What happened was Mr... They shot into it. They shot into it. Correct. Mr. Jenkins stood at the door. The perpetrator did not set foot in the apartment. Did not say a word to him. Did not ask for anything. Now keep in mind the 18 month earlier case was a robbery. This was not a robbery. If you look at the Trammell Crow case... Well, we don't know that. He might have been scared off. We don't know. We do know that 18 months earlier forcible entry occurred and someone was shot inside an apartment. I disagree, Your Honor. We do know it was a robbery because things were taken. That's in the record. That's in the police report. We don't know... This could have been a robbery. It might have been a robbery that was aborted for some reason. It could have been. We'll never know. But I'm asking you why wasn't the prior incident 18 months earlier enough? Because... Well, first of all, even in Trammell Crow you had many previous incidents with guns and the Supreme Court said that was not enough. And what the Supreme Court said in Trammell Crow is you have to actually look at the intent and the motive of the crimes. Well, Trammell Crow was a parking lot and this is an apartment where a very similar crime occurred 18 months prior. What's your best case that either because of the... that that should not be counted. That shouldn't be enough. Because 18 months is a long time and because drugs... There was 12 ounces of marijuana found 18 months before in that December 2010 case because things were taken and nothing was taken in this case. They tied the individuals up and shot one of them. It's not similar at all. In fact, the trial... That's sounding like you're doing the five-factor analysis and you might get there but that didn't even happen to the burglar. So if you've got vandalism it's not going to connect to murder. So Trammell Crow seems pretty darn unique in terms of the possible intentional murder. So that would make parking lot vandalism pretty irrelevant. I agree. But then when you're looking at 14 burglaries both in Trammell Crow and Tinder Walk the Supreme Court is saying these are property crimes that do implicate violence. I disagree. In fact, I think they say the opposite, Your Honor. Trammell Crow says a thief entering a dwelling to steal property may also commit personal crimes. That's a quote. Correct. In Tinder Walk if a burglar may enter an apartment so may a rapist. But Trammell Crow also says repeated occurrences of theft vandalism and simple assaults signal that future property crimes are possible. They do not suggest the likelihood of murder. What the district court did in this case is follow Trammell Crow to a T. And basically you have violent crimes and non-violent crimes and you knock the non-violent crimes out. I understand that there's some dicta in Trammell Crow that talks about the fact that you can have property crimes but they don't what they say is that increases the risk of future property crimes not violent crimes. I know you don't deal with this as much as we do but on the federal side burglary is considered a crime of violence and the Supreme Court has written about this more than once that if someone is willing to enter someone's home that there's a risk that there will be violence on a person because if they get protected or whatever I mean there's a substantial risk of physical violence to a person that's considered by burglary. I know that's not on the federal crime side but... And your honor Trammell Crow tells us exactly what the violent crimes are. Murder, manslaughter, rape, aggravated assault and robbery. That's on page 13 of Trammell Crow. So those are your violent crimes. To have to put a landlord on notice and make a future violent crime foreseeable you have to have a history of that. Not car thefts, not vandalism, not even burglaries. And so I understand your position there but the Texas Supreme Court who you're bound to follow in this case has told us exactly what the violent crimes are. And let me give you an example in Trammell Crow because in Trammell Crow what the court did is it basically went through all nine previous violent crimes. Out of the two hundred and something crimes they reduced it to nine. Have lower courts articulated the framework you're saying? Because that was an explicit listing and that's an exclusive listing. Is there any Texas lower court that's come up with that? I've not seen any that don't, that ignore it for sure. I mean I don't know of any cases that The Supreme Court articulated that and it seems slightly strange to say in an apartment you've got to have murders to be able to have a security issue. Well I don't think it has to be murders but it has to be, what this comes down to is what's foreseeable. And thinking about Trammell Crow, what we had is we had an individual who was shot. In the back, in the parking lot, at night, from a distance. And this is, that's not someone's home. That's a different scenario. But Your Honor, the point I'm trying to make is what the Trammell Crow court did is they tried to look at the intent. And what they said is look we had all sorts of previous crimes on the property, this quarry property in San Antonio. We had all sorts of previous crimes, in fact people pulling Uzis on people, people tapping on windows with guns. And they said, but wait a minute, in all of those situations what the persons did, the assailants, is they asked for property or they demanded something. But when Mr. Gutierrez was shot, nothing was asked for. And the, what they basically, He was shot from a distance. Well right, but he, The court was very focused on the very bizarre facts. Correct. And the court went into the fact that although the plaintiffs in the underlying case tried to make it sound like it was a robbery, in fact Mr. Gutierrez had been an informant and the court was basically of the opinion, although it wasn't a holding in the case, that this was a hit. And so why is that important? Because in that case they said that when someone just walks up and shoots someone that's not a foreseeable risk. And that's exactly what happened in our case. Mr. Jenkins went out with his buddies, gets home, there's conflicting testimony as to how long he'd been home at the time. He gets a knock on his door at 3.30 in the morning. He testifies that no one knocks on his door at 3.30 in the morning. He walks to his door. There's a peephole. He doesn't look through it. He doesn't say, who is it? He opens the door. A gentleman stands there, shoots him in the arm without saying a word to him, doesn't demand anything, doesn't say anything, and leaves. Now we could opine that potentially this is a robbery gone bad, but why not enter the apartment at that point and take something? Well, we don't know. Right. These are unknowable. The point is, could steps or should steps have been taken to make the, from the property owner's standpoint, to make the residents more secure in their homes? Well, I mean... And that's the keynote. That's the question. With respect, Your Honor, I don't think the test is could steps have been taken to make the property safer. The test is you look at the five factors and you look at whether or not there's previous crimes that are similar enough. And again, we can... What about the sexual, the rape? Why does that get excluded? Because... Because that's violence coming into the home again? Right. But I... We know that domestic violence... But when you say domestic, that's not a domestic violence case. I agree. It's not domestic violence. But there's no cases... There was... I believe there was a rape in Trammell Crow as well. No, I'm just asking you about this particular rape. Aggravated sexual assault with a cutting instrument. How in the world is that not predictive, foreseeable, likely you have violence coming in your doors? Because the test isn't is there violence coming in the doors. The test is was the... I understand that the tendency is to say, well, look, all these bad things that happened on the property in the past. But the Texas Supreme Court has said that's not the test. The test is it has to be... You have to be... For rape, the Texas Supreme Court has said it's irrelevant. No, but they haven't been that detailed. But we know that they are... We know that in Trammell Crow, they... If they're ignoring other gun cases in Trammell Crow, they're ignoring armed robberies on the premises because they're saying they're not similar enough. Then a rape with forcible entry can't be similar enough to this completely random crime. I mean, Trammell Crow says... It's not that it was completely random. We just know that someone was forcibly opened the door and there was a shooting. There might have been a robbery that occurred afterwards for reasons we don't really know. But similar enough to me, at least, to the 18 months prior. And where did the forcible sexual assault occur? Did it occur in an apartment? Or where did that occur? It was in the apartment. And it was a known... The other point that the trial court looked at that and also made the point that it was a known suspect. So the person who was sexually assaulted knew her perpetrator. And that's why the trial court, in its opinion... How did he gain access? Did she let him in? I don't think we have that information, Your Honor. All we have in the crime log... Look, all of the... Yeah, I believe it's in the record. And I'll tell you where you would find it. Yes. It would be on 1027 of the record. You know, Counsel, I don't read Trammell Crowe to limit the problem to exact similarity or in detail. I still think the test is foreseeability of harm. Well, the test is foreseeability. But if you look at the analysis that Trammell Crowe did and how they did it, I would state that the district court, in this case, did the exact same thing. I mean, what they did is they followed Trammell Crowe to a T in the same way that Trammell Crowe went through each of the previous crimes. Were they violent or were they not violent? And the one case, the 18-month case, the court said it was of superficial resemblance. And by the way, Trammell Crowe doesn't say that if you have one previous incident, that's enough. It doesn't really give us much help on what would constitute foreseeability. But I think that the district court here got it correct. And keep in mind, this is straight out of Timberwalk. The occurrence of a few crimes over an extended time period negates foreseeability. So that says a few crimes over an extended time period. And I think as Counsel for Appellant was talking about, if you have a number of things happening all at once, in other words, if within weeks or months of this incident, there were situations where residents were having their doors knocked on in the middle of the night and people were standing outside with guns, that's something that you might want to get security on board with or certainly warn your residents about. But the type of crime that happened here is completely dissimilar than anything that has ever happened before. Well, the Timberwalk itself says that property crimes may expose dangerous conditions that facilitate personal crimes, as when it talks about burglary. If a burglar may enter an apartment, so may a rapist. I mean, that's in Timberwalk itself. I agree. And an apartment intruder initially intended upon stealing may decide to assault a tenant discovered inside, even if the tenant avoids confrontation. I don't see how you can say that Timberwalk rules out burglaries categorically. Well, it doesn't state that. But keep in mind that in Timberwalk, they had no previous violent crimes for 10 years. That's right. But you've got 14 burglaries in your complex. A break-in incident where they tied people up and shot one of them in a sexual assault. And in Trammell Crow, there were 217 previous crimes. And that was a parking lot. But you're distinguishing between the type of premise, and no court does that. And Plaintiff's Counsel... I beg to disagree with you. If you look at the five factors, they don't talk about what type of premises you're on. But the district court didn't even do the five-factor analysis for each burglar. Right? The district court just said there's an absolute break-line, property, violence. And I'm not even going to look at the burglaries because those are property crimes. Because they're property crimes. That's it. It was a one-sentence analysis citing Trammell Crow. That's it. Right, because Trammell Crow knocked all those out, too. I mean, I agree, but he did exactly what the Supreme Court did in Trammell Crow, which is take out all the burglaries and theft of vehicles and vandalism. None of that. Well, breaking into someone's apartment to steal something is not an indication that you're going to shoot someone from a distance in a parking lot, target a victim, and shoot them in the back in a cinema parking lot. I mean, they're different crimes. And it comes down to foreseeability. And Timberwalk gave the factors right. If Timberwalk was an apartment residence case, Trammell Crow wasn't. I mean, I don't think you can divorce what the premises was being used for at the time of the crime from the foreseeability analysis. I mean, it's part of foreseeability. Well, I agree. And Timberwalk itself, Timberwalk doesn't say you look at all crimes. It includes burglaries. Well, but I don't know if it does or it doesn't. They look at that because that's all they have. But what they say in Timberwalk is that if stabbing is not foreseeable because of prior incidents of vandalism and theft. That's correct. But they go on to say that burglary can be for rapists. Well, and then they say a string of assaults and robberies, violent crimes, make other violent crimes like murder and rape foreseeable. That's true. But then look at the very next paragraph. Well, I understand. You can't say this but not this. Well, I know. I would say that there might be conflicting statements in those cases. I don't see any conflict at all. And I was on the court when this was written and I do not see a conflict. Well, except that the same court 10 years later, maybe not the same justices, but the same court 10 years later goes through the step-by-step analysis. And whether they said it in Timberwalk or not, we know that they take property crimes out when they do their analysis. I think that's a stretch. I mean, they didn't report to overrule Timberwalk or say we misspoke here about burglary in an apartment setting. Well, I think the cases are congruent. I think what you had... I agree with you. I think they are congruent. I think what you had in Timberwalk is you didn't have any violent crimes. And so what they say is they look at these certain crimes. They make maybe what are inconsistent statements as to whether or not nonviolent crimes should be considered or not. But then 10 years later, we get a case with nine previous violent crimes. And that's all the court looks at. Each violent crime in Trammell Crow gets its own paragraph. And they go through it and they do the analysis of it. And even though a guy had an Uzi at one point, even though someone tapped on a window and showed someone a gun, there were armed robberies. I mean, the previous potential foreseeable acts in Trammell Crow far exceed anything in this case, which is one potential case 18 months earlier where property was stolen, they entered the premises, they tied people up, and there was 12 ounces of marijuana found. So... If Timberwalk controls and there's a remand, what more discovery would you expect in order to ascertain whether the 14 burglaries qualify or not? Or do you accept that your own client's crime log is sufficient for the court to do the five-factor analysis? Well, the crime log basically just says when the occurrence happened and where. Was it the parking lot? Was it an apartment? But I think the issue is I don't think that you do a five-factor analysis. I mean, you have to analyze the previous crimes, I guess is what you're saying. But how would a auto theft, analyzing the five factors of an auto theft, ever relate to someone standing at a door? I'm not sure they're disputing the burglaries of the vehicles. There were several of those, and I think today they consider maybe in a brief the domestic violence cases. There are some that are per se excluded, but there are others that need to foresee abilities. They're focusing just on the 14 burglaries. I'm sorry, what was your question again? My question is, is there any more discovery that would be needed? I don't know if any more would be needed, but I also don't know if any more would get us anything at this point. I mean, it's been a long period of time, and I don't know what information we have on those burglaries. So the lower courts in Texas, you're saying, they don't require police incident reports in order to comply with the law? Not that I know of. But to the extent the record, basically, and the history of crimes, that's plaintiff's burden to show the similarity and to show what has happened in the past. And so what we have is we have the crime log, and then we have a couple newspaper clippings as far as the 18-month prior incident. But as far as the log itself goes, there's not much information contained in that. And let me clarify something about Henry Ridge, if I could. The idea that Henry Ridge saw that Henry Ridge left nine months prior to Mr. Jenkins living in this complex. And what he testified he saw one time was someone's car had been towed, a resident's car had been towed, and the resident was upset, and the resident went out and assaulted the tow truck driver. And that was just through his testimony. It's not included in the 10 crimes in the crime log. But that's really all that he testified to. And so we would ask that you affirm the trial court's motion for summary judgment in this case because we believe the trial court properly utilized the Trammell Crowe analysis to come to its conclusion. The court has touched on what the appellant believes is a key issue when looking at Trammell Crowe versus Timberwalk, and that is the fact that Trammell Crowe is a commercial building, a commercial parking lot, versus Timberwalk being an apartment. There are certain quotes that I think ring true when the analysis is done. The problem is the trial court basically limited their analysis to one of the five factors, and that's similarity, and that is not what the two seminal cases call for. You have to look at all the factors. You have to look at all of the crimes, and as they fit into and relate to the crime that happened and the foreseeability factor. In Timberwalk it says real clearly, in determining whether the occurrence of certain criminal conduct on a landowner's property should have been foreseen, courts should consider whether any criminal conduct previously occurred on or near the property, and then they go on to talk about the factors. Another comment that Trammell Crowe, when citing Timberwalk, says, a thief entering a dwelling to steal property may also commit personal crimes. That's important because we are dealing with a dwelling, a residential dwelling, and if there are burglaries and there are robberies, it could lead to attacks on the person because they're going into apartments or they're going into cars. So that is another quote from the case that shows that the district court limited their scope of their review of these crimes and essentially did not allow the foreseeability analysis to be done according to Timberwalk. I am troubled, I must say, by Trammell Crowe because it goes through some pretty serious crimes that occurred in this shopping center, and it said in two years only three crimes using a weapon were involved, and here we have, I guess, two crimes involving a weapon. True. But again, Trammell Crowe, if you're looking at Trammell Crowe and they eliminate a large number of burglaries, and I know Appellee's Counsel is alluding to the fact that they went step by step, they eliminated burglaries and theft because it's a mall, because it's the site where a mall is and they're going to report any time somebody shoplifts or whatever. Well, that aside, they say there were three incidents involving guns, where people were held up at gunpoint in the parking lot, and they said that's not enough. Three in two years isn't enough. And again, I think that's the difference between a commercial setting and a residential setting. Timberwalk treats it totally different, and Timberwalk is cited by... Well, the risk to me seems the same from the standpoint of people leaving a movie theater after it's over in the dark, going to their cars, and the man was killed, ultimately. But it would be a little more... I mean, they're sitting ducks for people who want to rob them. And the position I would take, Your Honor, is that in a parking lot it is much more difficult for a management company that owns a large mall with a parking lot to provide the sort of security that's needed to make sure those sorts of long-distance shooting like Trammell Crowe was happens. In an apartment complex, the foreseeability factor is there with all these crimes and the 18 months prior crime that is very similar. They have the means. They have their own employees seeing it. They have the means to ensure that the adequate security is there for those residents, those people who live there. It's different than going to a mall. So again, our position, Your Honor, is that based on Timberwalk, the court should have relied on those five factors. They should have not just limited the scope to similarity, even though we believe there was a crime that matched that 18 months prior. They should have looked at all of the burglary. They should have looked at all of the assaults. They should have looked at all of the crimes as they fit to the five categories. And with that analysis, they would have found that there was an issue, at least a genuine issue of fact, as to the foreseeability. Thank you, Your Honor. Thank you. That concludes the arguments for today. These cases will be under submission.